**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| DANIEL CASING, ) | |
|         Plaintiff, ) | |
| v. ) | |
| ) | Case No. 05-2161 |
| BOARD OF EDUCATION CHAMPAIGN ) | |
| COMMUNITY UNITED SCHOOL ) | |
| DISTRICT #4, ) | |
|         Defendant. ) | |

# O R D E R

In July 2005, Plaintiff, Daniel Casing, filed a complaint against Defendant, the Board of Education of Champaign Community Unit School District No. 4, in the Circuit Court of the Sixth Judicial Circuit, Champaign County, Illinois. In July 2005, Defendant removed the case to federal court by filing a Notice of Removal (#1). Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.

In August 2005, Defendant filed a Motion To Dismiss Counts II, V, and VI (#3). After reviewing the parties' pleadings and memoranda, Defendant's Motion To Dismiss Counts II, V, and VI **(#3)** is **GRANTED in part** and **DENIED in part.**

## I. Background

The following background is taken from the complaint. At relevant times, Arthur Culver was Superintendent of the District. Plaintiff worked for the District as Assistant Superintendent for Financial Services and Operations from November 2002 until mid-2004. Defendant's personnel policies and a written contract between Plaintiff and Defendant established the terms of his employment. According to the personnel policies, administrators will be evaluated annually and will not be eligible for a raise if they have been assigned a mentor or have been working on a remediation plan. Plaintiff was never subject to a remediation plan or formally assigned a mentor; in fact, Culver sent Plaintiff a letter of appreciation for his work in April 2004.

During July 2004, Culver showed Plaintiff an initial evaluation of Plaintiff's performance which praised Plaintiff and recommended that his contract be renewed. He did not give Plaintiff a copy of the evaluation.

In July 2004, the District Director of Finance, Alan Dudley, called Plaintiff while Plaintiff was on vacation and informed him that the final accounting for the fiscal year 2003-04 revealed excess expenditures of five million dollars. Plaintiff told Dudley he would return to work as scheduled on July 12, 2004. He asked Dudley to perform a preliminary analysis of the problem in the meantime.

When Plaintiff returned to work on July 12, 2004, Culver told him he was disappointed that Plaintiff had not returned to work immediately upon receiving information regarding the budget crisis. He told Plaintiff to find an explanation for the budget shortfall. He also told Plaintiff that Plaintiff should submit his resignation to Culver. Plaintiff told Culver that he would not resign. Culver then informed Plaintiff that if Plaintiff did not resign, Culver would fire him. Culver gave Plaintiff a notebook and ordered him to write a letter of resignation by 5:00 p.m. that day.

Plaintiff called Defendant's attorney, Charles Rose, who told Plaintiff that Culver was serious and that Plaintiff could either resign or see what transpired.

Culver then told Plaintiff that Plaintiff could submit his letter of resignation, work to explain the shortfall, and then appear at a special July board meeting. If Plaintiff provided an adequate explanation for the shortfall, Defendant Board of Education would not accept Plaintiff's resignation. Based on this understanding, Plaintiff wrote a letter of resignation. Culver told Plaintiff not to attend the July 12, 2004, regular board meeting.

On July 13, 2004, Assistant Superintendent Beth Shepperd gave Plaintiff a letter stating that Defendant Board of Education had accepted Plaintiff's resignation at the July 12, 2004, board meeting and that it would become effective on July 30, 2004.

The Board of Education did not hold a special meeting in July, but Plaintiff was told that he should attend the August 9, 2004, board meeting. At that meeting, Defendant Board discussed the budget shortfall in closed session. The Board did not discuss Plaintiff's resignation or job performance or invite Plaintiff to retain his employment despite his explanation for the budget shortfall.

Plaintiff alleges that he was terminated in part because he was aware of improprieties relating to the District having improperly paid Culver's retirement fund contributions for over eighteen months before Culver offered to repay the District for the retirement funds it had mistakenly paid.

As a result of the termination of his employment, Plaintiff alleges that he has lost wages, retirement income, and raises to which he was entitled. In addition, Plaintiff's reputation as an administrator has suffered irreparable harm and he has incurred relocation expenses.

Plaintiff's six-count complaint alleges breach of contract, constructive discharge, violations of procedural and substantive due process under the United States Constitution pursuant to Section 1983 (42 U.S.C. § 1983), and violations of procedural and substantive due process under the Illinois Constitution.

## II. Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Miller v. Reebie Storage and Moving Co., Inc.*, No. 93 C 3986, 1993 WL 414689, *1 (N.D. Ill. Oct. 15, 1993). When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claim and draw all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

### III.  Analysis

Defendant argues that the Court should dismiss Counts II, V, and VI because (1) no such cause of action as "constructive discharge" exists under Illinois law (Count II); and (2) the Illinois Constitution does not provide a private right of action for the claims of procedural and substantive due process (Counts V and VI).

#### A.  Constructive Discharge (Count II)

Defendant first argues that Illinois law does not recognize the claim of constructive discharge alleged in Count II.  In Count II, Plaintiff alleges that, assuming it is found that Plaintiff resigned, he was forced to resign; Culver's repeated statements to Plaintiff that Plaintiff would be fired if he did not resign made Plaintiff's workplace unbearable and intolerable; Plaintiff reasonably assumed that if he did not resign, his employment would be terminated; Defendant breached its contract with Plaintiff by making his workplace unbearable and intolerable; and Plaintiff performed all the conditions of his contract.

In support of its argument, Defendant relies on *Washburn v. IBP, Inc.*, in which the plaintiff alleged retaliatory discharge based on constructive discharge.  He claimed the constructive discharge occurred because he was forced to leave the plant where he was employed to seek medical attention that his employer failed to provide.  *Washburn v. IBP, Inc.*, 910 F.2d 372 (7th Cir. 1990).  When considering this retaliatory discharge claim, the Seventh Circuit stated, "Illinois does not recognize a cause of action for constructive discharge." *Id.* at 374 n.2.

Defendant acknowledges that Illinois law recognizes the *doctrine* of constructive discharge in limited circumstances.  For example, in *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 912 (Ill. App. Ct. 1988), the court distinguished between constructive discharge based on a forced resignation and constructive discharge based on harassment, and concluded that Illinois had rejected use of the constructive discharge doctrine where the purported discharge was based on the existence of harassment.  Defendant also acknowledges that constructive discharge may be an element of other employment discrimination claims.  *See, e.g., Burnell v. Gen. Tel. Co. of Ill., Inc.*, 536 N.E.2d 1387, 1389 (Ill. App. Ct. 1987) (applying the

concept of constructive discharge to a claim under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.*)).

Plaintiff responds that Defendant has viewed the claim in Count II too narrowly. He contends that courts have recognized a claim for constructive discharge under federal law when employers cause employees to resign by creating intolerable working conditions. In support, Plaintiff cites *Levenstein v. Salarsky*, 414 F.3d 767, 774 (7th Cir. 1991), and contends that it stands for the proposition that a plaintiff could bring a constructive discharge claim as a constitutional claim when that claim is based on a violation of due process rights. A review of *Levenstein* indicates that the claim at issue was a due process claim and the Seventh Circuit *applied* the doctrine of constructive discharge to that claim. *Levenstein* does not, however, hold or state that "constructive discharge" constitutes an independent basis for liability.

In *Pennsylvania State Police v. Suders*, the United States Supreme Court describes the "constructive discharge doctrine" as follows: "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Pa. State Police v. Suders*, 542 U.S. 129, __, 124 S. Ct. 2342, 2351-52 (2004). Thus, the Supreme Court characterized the constructive discharge doctrine as a mechanism that enables a plaintiff to state a retaliatory discharge claim when the employer did not directly discharge the employee. In *Suders*, the underlying basis for liability was the employer's violation of Title VII; the Supreme Court subsequently applied the constructive discharge doctrine to that Title VII claim.

We do not think that a claim of "constructive discharge" stands alone as a viable basis for liability, any more than a claim of "termination of employment" would stand alone. The mere allegation of loss of employment, whether based on constructive discharge or direct termination of employment, is not enough to state a claim; a plaintiff must also allege some grounds for holding the employer liable for that loss. Instead, "the doctrine is ancillary to an underlying claim in which an express discharge otherwise would be actionable . . . it joins the actionable

5

claim and operates as a defense against an employer's contention that the employee quit voluntarily." *Strozinsky v. School Dist. of Brown Deer*, 614 N.W.2d 443, 462 (Wis. 2000).

In Plaintiff's memorandum in opposition to the motion to dismiss, he states, "Plaintiff's due process rights under the federal constitution were violated, depriving him of a protected property interest" (#9, p. 2), and "Plaintiff was either terminated by Defendant or forced to resign in violation of his rights under §1983" (#9, p. 3). Thus, it appears that, in Count II, he is attempting to allege that Defendant violated his right to due process. As an initial matter, it is well-recognized that Section 1983 does not create any substantive rights; rather, it is only a vehicle by which violations of the United States Constitution and selected federal statutes may be redressed. Accordingly, when pleading a claim pursuant to Section 1983, the plaintiff must allege the specific right at issue. *See Graham v. Connor,* 490 U.S. 386, 394 (1989).

It is also well-established that a plaintiff cannot amend his complaint through arguments presented in his legal memoranda. *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993). Plaintiff indicates in his memorandum that he is attempting to state a due process claim based on constructive discharge rather than termination. If so, it is not clear from the allegations of the complaint, particularly in light of his clear statement of due process claims in Counts III and IV. Accordingly, the Court grants the motion to dismiss and allows Plaintiff to amend his claim in Count II.

### B.  Procedural and Substantive Due Process Claims (Counts V and VI)

Defendant next argues that Plaintiff has no private right of action for procedural and substantive due process claims under Article I, Section 2 of the Illinois Constitution. *See Faulkner-King v. Wicks*, 590 N.E.2d 511, 516 (Ill. App. Ct. 1992). In *Faulkner-King*, the court dismissed a due process claim brought pursuant to Article I, Section 2 of the Illinois Constitution, stating that the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq*.) (hereinafter "IHRA") is the exclusive remedy for employment discrimination claims. *Id*. Plaintiff distinguishes *Faulkner-King* because, in that case, the due process claim was based on sex

discrimination in employment, an area expressly preempted by the IHRA.  (*See* 775 ILCS 5/2-102.)  Here, the due process claim is not based in any way on discrimination.  Moreover, the preemptive reach of the IHRA is limited to those grounds identified in the statute as civil rights violations.  (*See* 775 ILCS 5/1-103(D).)  Due process is not one of those enumerated grounds.

Plaintiff responds that Illinois law recognizes a private right of action under Article I, Section 2.  In support, he cites several cases.  *See Garrido v. Cook County Sheriff's Merit Bd.*, 811 N.E.2d 312 (Ill. App. Ct. 2004); *Prato v. Vallas*, 771 N.E.2d 1053 (Ill. App. Ct. 2002); *Van Kast v. Bd. of Educ. of the City of Chi., Ill.*, No. 87 C 2582, 1988 WL 2791 (N.D. Ill. Jan. 12, 1988) (unreported).  In *Garrido*, a deputy sheriff alleged that the county sheriff's merit board violated her right to substantive due process when it terminated her employment based on her violation of the zero-tolerance drug-free workplace policy.  *Garrido*, 811 N.E.2d at 319.  In *Prato*, a public school principal alleged that the school board violated her right to due process under the federal and state constitutions when it terminated her for violations of employment contract.  *Prato*, 771 N.E.2d at 1064.  In *Van Kast*, a high school principal sued the school board for suspending him without pay, claiming that his presuspension hearing did not accord him due process, in violation of the federal and state constitutions and state statute.  *Van Kast*, 1988 WL 2791, at *1.

As a general rule, unless a constitutional provision has self-executing language, it requires implementing language in order for an individual to be able to bring suit to enforce the right conferred by the particular provision.  *See, e.g., Baker v. Miller*, 636 N.E.2d 551, 553 (Ill. 1994).  For example, Article I, Section 17 of the Illinois Constitution, which addresses employment discrimination, includes the following self-executing language:  "These rights are enforceable without action by the General Assembly . . ."  ILL. CONST., Art. I, § 17.  This clause "makes clear that the provision is self-executing; no implementing legislation is necessary to sustain a cause of action for section 17 discrimination."  *Baker*, 636 N.E.2d at 553.  Thus, suits can be brought directly under Section 17 because that Section expressly provides a private cause of action in the form of a self-executing provision.  In contrast, in *Teverbaugh v. Moore*, the

court, addressing Article I, Section 18, noted the absence of language providing a right of action for damages. *Teverbaugh v. Moore*, 724 N.E.2d 225, 229 (Ill. App. Ct. 2000). In the absence of implementing legislation, the court concluded that Section 18 was not self-executing; therefore, the plaintiff had no private right of action under Section 18.

Article I, Section 2 of the Illinois Constitution states, "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." ILL. CONST., Art. I, § 2. It does not contain any self-executing language. *See Jacobson v. Nat'l R. R. Passenger Corp.*, No. 97 C 6012, 1999 WL 1101299, *11 (N.D. Ill. Nov. 29, 1999) (unreported) (stating that the Illinois Constitution does not contain an express remedy for a violation of Article I, Section 2).

In the absence of self-executing language, courts have also held that constitutional provisions may be self-executing when they are negative or prohibitory in character (*Law v. People ex rel. Huck*, 87 Ill. 395 (Ill. 1877)), when they limit the power of the government or prohibit the performance of any act by an officer or person (*Washingtonian Home of Chi. v. City of Chi.*, 41 N.E. 893 (Ill. 1895)), or when they are merely declaratory of the common law (C.J.S., Constitutional Law § 48).

The language of Article I, Section 2 is negative or prohibitory in nature, therefore, it is self-executing. *See Methodist Med. Ctr. of Ill. v. Taylor*, 489 N.E.2d 351, 354 (Ill. App. Ct. 1986) (stating that under both the federal and Illinois constitutions, the due process clauses "stand as a prohibition against governmental action"). Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's state constitutional claims.

### IV.  Summary

For the reasons set forth above, Defendant's Motion To Dismiss Counts II, V, and VI **(#3)** is **GRANTED** as to Count II and **DENIED** as to Counts V and VI. Because it is

conceivable that Plaintiff can amend his complaint to state a claim in Count II, the dismissal is without prejudice and Plaintiff is granted leave to file an amended complaint within fourteen (14) days of this Order.

ENTER this 30th day of November, 2005.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE
